Gregory Markow (State Bar No. 216748)
gmarkow@cgs3.com
Crosbie Gliner Schiffman Southard & Swanson LLP (CGS₃)
12750 High Bluff Dr., Suite 250
San Diego, California 92130
Telephone: (858) 367-7676

David Berten (IL Bar # 6200898) (to be admitted *Pro Hac Vice*)
dberten@giplg.com
Alison Aubry Richards (IL Bar # 6285669) (to be admitted *Pro Hac Vice*)
arichards@giplg.com
Alexander Debski (IL Bar # 6305715) (to be admitted *Pro Hac Vice*)
adebski@giplg.com
Global IP Law Group, LLC
55 West Monroe Street, Suite 3400
Chicago, IL 60603
Telephone: (312) 241-1500

*Attorneys for Plaintiff American GNC*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERICAN GNC CORPORATION,<br><br>                    Plaintiff,<br><br>v.<br><br>GOPRO, INC.<br>ROBERT BOSCH GMBH and<br>BOSCH SENSORTEC GMBH,<br><br>                    Defendants. | Case No.   '18 CV0968 GPC KSC<br><br>**COMPLAINT FOR PATENT INFRINGEMENT AND JURY TRIAL DEMANDED** |

Plaintiff American GNC Corporation files this Complaint for patent infringement under the patent laws of the United States, Title 35 of the United States Code, against Defendants GoPro, Inc., Robert Bosch GmbH, and Bosch Sensortec GmbH and alleges as follows.

## PARTIES

1.    Plaintiff American GNC Corporation ("AGNC") is a California corporation with its principal place of business at 888 Easy Street, Simi Valley, California 93065 that specializes in inventing and applying advanced and innovative technologies to contemporary problems within the fields of guidance, navigation, control and communications (GNCC), inertial sensors, health monitoring, intelligent processing, and autonomous robotics.

2.    Defendant GoPro, Inc. ("GoPro") is a corporation duly organized and existing under the laws of the state of Delaware, with a place of business at 5600 Avenida Encinas, Carlsbad, California 92008 and additional places of business in or around Los Angeles, Santa Monica, and San Mateo.  GoPro can be served with process through its registered agent, CT Corporation System, 818 W. Seventh Street, Suite 930, Los Angeles, California 90017.

3.    GoPro makes, uses, imports, sells and/or offers for sale cameras, drones, and mountable and wearable accessories and related applications and services.

4.    Defendant Robert Bosch GmbH ("Bosch") is a German company that owns and includes approximately 440 subsidiaries.

5.    Bosch's principal place of business is at Robert-Bosch-Platz 1, 70839 Gerlingen, Germany.  On information and belief, Bosch can be served with process at that address.

6.    Bosch makes, uses, sells, offers for sale, and imports MEMS sensors, including the BMI160, BHA250, and BMG250.

7.    The Bosch BMI160 is an inertial measurement unit. The Bosch BMI160 includes a gyroscope.   The Bosch BMI160 includes an accelerometer.  The Bosch BMI160 is designed for use in 9-axis motion detection and optical image stabilization of camera modules.

8.    The Bosch BHA250 is a smart-hub with an integrated three-axis accelerometer and a microcontroller.  The Bosch BHA250 is specifically designed for motion sensing.  The BHA250 matches the requirements of smartphones, wearables or any other application that demands highly accurate, real-time motion data.

9.    The Bosch BMG250 is a digital three-axis angular rate sensor.  The Bosch BMG250 includes a gyroscope. The BMG250 is designed for use in 3-axis motion detection, optical image stabilization, electronic image stabilization, and optical/electronic video stabilization.

10.    Defendant Bosch Sensortec GmbH ("Bosch Sensortec") is a subsidiary 100% owned by Bosch.

11.    Bosch Sensortec markets the BMG250 for use in image stabilization, including in camera modules.  Bosch Sensortec markets the BMG250 for use in three-axis motion detection.

12.    Bosch Sensortec is a German company with its principal place of business at Gerhard-Kindler-Straße 9, 72770 Reutlingen / Kusterdingen, Germany.  On information and belief, Bosch Sensortec can be served with process at that address.

13.    Bosch Sensortec sells and offers for sale the Bosch BMI160, including through its website https://www.bosch-sensortec.com/bst/products/all_products/bmi160.

14.    Bosch Sensortec sells and offers for sale the Bosch BHA250, including through its website https://www.bosch-sensortec.com/bst/products/all_products/bha250.

15.    Bosch Sensortec sells and offers for sale the Bosch BMG250, including through its website https://www.bosch-sensortec.com/bst/products/all_products/bmg250.

COMPLAINT                                              CASE NO.

16.     Bosch (alone and/or through Bosch Sensortec and/or Bosch's other subsidiaries) supplies the Bosch BHA250 and the Bosch BMG250 used in GoPro's Hero6.

17.     Bosch (alone and/or through Bosch Sensortec and/or Bosch's other subsidiaries) supplies the Bosch BMI160 used in GoPro's Hero5.

18.     Upon information and belief, GoPro and Bosch (alone and/or with Bosch Sensortec) are jointly and severally liable and/or joint tortfeasors with one another with respect to the matters alleged herein.

**JURISDICTION AND VENUE**

19.     This is a civil action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. § 1, et seq., and more particularly 35 U.S.C. § 271.

20.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a).

21.     Defendant GoPro is subject to this Court's general personal jurisdiction pursuant to due process and/or the California Long Arm Statute, Cal. Code Civ. Proc § 410.10, due at least to its substantial business conducted in this District, including: (i) having conducted business in this District and the State of California through its multiple offices; (ii) solicited business in the State of California, transacted business within the State of California and attempted to derive financial benefit from residents of the State of California in this District, including benefits directly related to the instant patent infringement causes of action set forth herein; (iii) having placed its products and services into the stream of commerce throughout the United States and having been actively engaged in transacting business in California and in this District, and (iv) having committed the complained of tortious acts in California and in this District.

22.     GoPro, directly and/or through subsidiaries and agents (including distributors, retailers, and others), makes, imports, ships, distributes, offers for sale, sells, uses, and advertises (including offering products and services through its website,

3

https://gopro.com/, as well as other retailers) its products and/or services in the United States, the State of California and the Southern District of California.

23.     GoPro, directly and/or through its subsidiaries and agents (including distributors, retailers, and others), has purposefully and voluntarily placed its infringing products and/or services, as described below, into the stream of commerce with the expectation that they will be purchased and used by consumers in the Southern District of California.  These infringing products and/or services have been and continue to be purchased and used by consumers in the Southern District of California. GoPro has committed acts of patent infringement within the State of California and, more particularly, within the Southern District of California.  For example, GoPro is a California corporation and has a regular and established place of business in Carlsbad, San Diego County, California.

24.     Bosch and Bosch Sensortec are subject to this Court's general personal jurisdiction pursuant to due process and/or the California Long Arm Statute, Cal. Code Civ. Proc § 410.10, due at least to its substantial and continuous business conducted in this District, including: (i) having solicited business in the State of California, transacted business within the State of California and attempted to derive financial benefit from residents of the State of California in this District (including through Bosch's hundreds of wholly-owned subsidiaries), including benefits directly related to the instant patent infringement causes of action set forth herein; (ii) having placed its products and services into the stream of commerce throughout the United States and having been actively engaged in transacting business in California and in this District, and (iii) having committed the complained of tortious acts in California and in this District.

25.     Bosch, directly and/or through subsidiaries and agents (including distributors, retailers, and others), makes, imports, ships, distributes, offers for sale, sells, uses, and advertises (including offering products and services through its website https://www.bosch-sensortec.com/ as well as other retailers) its products and/or services

COMPLAINT                                                          CASE NO.

in the United States, the State of California and the Southern District of California, including to GoPro, a company operating in California.

26.     Bosch and Bosch Sensortec, directly and/or through their subsidiaries and agents (including distributors, retailers, and others), have purposefully and voluntarily placed one or more of their infringing products and/or services, as described below, into the stream of commerce with the expectation that they will be purchased and used by consumers in the Southern District of California.  These infringing products and/or services have been and continue to be purchased and used by customers and consumers in the Southern District of California.  Bosch has committed acts of patent infringement within the State of California and, more particularly, within the Southern District of California.

27.     This Court's exercise of personal jurisdiction over GoPro, Bosch, and Bosch Sensortec, is consistent with the California Long Arm Statute, Cal. Code Civ. Proc § 410.10, and traditional notions of fair play and substantial justice.

28.     Bosch and Bosch Sensortec are also subject to this Court's specific personal jurisdiction, because the present dispute arises from, and is related to, Bosch's and Bosch Sensortec's activities in California and in this District, as described above.  These activities include Bosch (through Bosch Sensortec and/or its other wholly-owned subsidiaries) soliciting business from, and transacting business with, GoPro and others in the State of California and deriving financial benefit from transactions with GoPro and others in the State of California in this District, including sales of the Bosch subcomponents in GoPro products discussed below.   Bosch, directly and/or through subsidiaries and agents (including distributors, retailers, and others), makes, imports, ships, distributes, offers for sale, sells, uses, and advertises (including offering products and services through its website https://www.bosch-sensortec.com/ as well as other retailers) its products and/or services in the United States, the State of California and the Southern District of California.

5

29.     Venue is proper in this District under §1400 (b), which provides that "Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." Venue is proper as to GoPro, which resides in California, because it is incorporated in California and it also has a regular and established place of business in this District at 5600 Avenida Encinas, Carlsbad, California 92008 and has committed acts of infringement here, including making, using, selling, and offering for sale the accused devices.

30.     Venue is proper as to Bosch, and Bosch Sensortec, which are organized under the laws of Germany, under 28 U.S.C. § 1391(c)(3), which provides that "a defendant not resident in the United States may be sued in any judicial district, and the joinder of such a defendant shall be disregarded in determining where the action may be brought with respect to other defendants."

## BACKGROUND ABOUT PLAINTIFF AGNC

31.     AGNC was founded by Ching-Fang Lin, Ph.D. in 1986 as a California corporation.  AGNC's headquarters are at 888 Easy Street, Simi Valley, California 93065.  AGNC is the owner of record and assignee of 79 issued United States patents, including the Patents-in-Suit.

32.     Dr. Lin previously received his doctorate in Computer, Information, and Control Engineering from the University of Michigan in Ann Arbor.

33.     Dr. Lin authored over 400 technical publications and was responsible for over 100 patent application filings at AGNC, including as an inventor on each of the Patents-in-Suit.

34.     Dr. Lin was responsible for over 1,000 government contract reports and led the effort to introduce over 30 Guidance, Navigation, Control and Communications (GNCC) products.

35.     Dr. Lin's achievements and awards include: SBA Small Business Person of

COMPLAINT                                                              CASE NO.

1 the Year 2002, NASA Space Act Award Recognition for Inventions and Scientific and
2 Technical Exceptional Contributions, Multiple Multiyear NASA Innovative Invention
3 Award, Donald P. Eckman Award Nominee for Outstanding Control Engineer, Nominee
4 for the Mechanics and Control of Flight Award, among many others.

5      36.    AGNC is an operating high technology company that specializes in
6 inventing and applying advanced and innovative technologies to contemporary problems
7 within the fields of guidance, navigation, control and communications (GNCC), inertial
8 sensors, health monitoring, intelligent processing, and autonomous robotics.

9      37.    Since its establishment in 1986, AGNC has been actively involved in
10 pioneering efforts related to inertial sensors, interruption-free positioning, and INS/GNSS
11 fusion technologies that AGNC has invented, which are disclosed in its extensive patent
12 portfolio. AGNC made the world's first MEMS rate integrating gyroscope in 1999,
13 setting the stage for development of its coremicro® IMU product series.

14      38.    AGNC is also among the very first companies to patent micro-
15 electromechanical (MEMS) Inertial Measurement Unit ("IMU") technology, which is
16 now commonly found in consumer electronics such as cameras, drones, tablets and
17 smartphones.

18      39.    AGNC analyzed positioning technologies and led breakthrough efforts
19 during the late 1990's for the fusion of inertial data with other sources.

20      40.    AGNC's patented solutions are now found on consumer devices for
21 applications such as indoor or urban navigation.

22      41.    More information about Plaintiff and its products can be found at AGNC's
23 website, www.americangnc.com.

24      42.    As of the date of this Complaint, AGNC has licensed its patents to four
25 companies.

26      43.    Prior to filing this lawsuit, AGNC diligently attempted to resolve its claims
27 against GoPro without litigation.

28

44. GoPro has refused to enter into a license agreement with AGNC.

**THE PATENTS-IN-SUIT AND CLAIMS-IN-SUIT**

45. AGNC is the owner of record and assignee of each of U.S. Patent Nos. 6,311,555; 6,456,939; 6,508,122; 6,671,648; and 6,697,758 (the "Patents-in-Suit").

46. AGNC had and has the exclusive right to sue and recover damages for infringement of the Patents-in-Suit during all relevant time periods.

47. On November 6, 2001, U.S. Patent No. 6,311,555 (the "'555 Patent") entitled "Angular Rate Producer with Microelectromechanical System Technology" was duly and legally issued by the United States Patent and Trademark Office ("USPTO").

48. On September 24, 2002, U.S. Patent No. 6,456,939 (the "'939 Patent") entitled "Micro Inertial Measurement Unit" was duly and legally issued by the USPTO.

49. On January 21, 2003, U.S. Patent No. 6,508,122 (the "'122 Patent") entitled "Microelectromechanical System for Measuring Angular Rate" was duly and legally issued by the USPTO.

50. On December 30, 2003, U.S. Patent No. 6,671,648 (the "'648 Patent") entitled "Micro Inertial Measurement Unit" was duly and legally issued by the USPTO.

51. On February 24, 2004, U.S. Patent No. 6,697,758 (the "'758 Patent") entitled "Processing Method for Motion Measurement" was duly and legally issued by the USPTO.

52. AGNC asserts that GoPro, together with Bosch and Bosch Sensortec, have been and are now infringing, directly and by inducement, at least the following claims of the Patents-in-Suit in this District and elsewhere in the United States:

- '555 Patent - claims  49 and 50;
- '939 Patent – claim 96;
- '122 Patent – claims 1, 3;
- '648 Patent – claims 1 and 4; and
- '758 Patent – claim 1.

COMPLAINT                                      CASE NO.

**INFRINGING PRODUCTS**

53.    GoPro has been, and now is, directly infringing claims of the Patents-in-Suit under 35 U.S.C. § 271(a) by making, using, offering for sale, selling, and/or importing the below accused cameras, drones, and other devices in this District and elsewhere in the United States that include the systems and methods claimed in the Patents-in-Suit, including, for example, GoPro's sale of these products and use of said methods during set-up, testing, and demonstration of its cameras and drones.

54.    To the extent that any steps of the methods covered by the patents-in-suit are performed by third-parties, such as GoPro's customers, AGNC alleges in the alternative that GoPro is liable for direct infringement because it directs and controls any such third-party steps including, for example, by dictating the manner by which its customers use its accused products.  For example, through its products' technical design, GoPro conditions its customers' receipt of the benefits of its products upon performance of a step (or steps) of a patented method and establishes the manner and timing of that performance.  GoPro is jointly and severally and/or vicariously liable for any acts performed by such third-parties on behalf of GoPro.

55.    In addition, GoPro has been and now is inducing the direct infringement of method claims of the Patents-in-Suit pursuant to U.S.C. § 271(b) at least by one or more of making, using, offering for sale, selling and/or importing the below accused cameras, drones, and other devices in this District and elsewhere in the United States, which GoPro designed and intended to use and/or practice the methods and processes covered by the Patents-in-Suit.

56.    GoPro has induced infringement by actively encouraging infringement by, for example, providing user guides and other technical support materials and services to its users and by advertising features that are used, and benefits that are achieved through use of the Patents-in-Suit; as one example, GoPro's Hero 5 User Manual encourages users to utilize video stabilization that "adjusts the footage to offset for motion during

COMPLAINT                                                    CASE NO.

capture" for "smoother footage, especially in activities with relatively small but fast motion including cycling, motorcycling, and handheld uses." As another example, GoPro's website's product page for the Fusion camera advertises "[s]hockingly smooth video.  We're talking next-level stabilization without a gimbal."[1]

57.    Despite GoPro's awareness of the Patents-in-Suit and knowledge that its encouraging acts result in direct infringement, GoPro has engaged in egregious misconduct by continuing these acts of inducement with specific intent to cause and encourage direct infringement of the Patents-in-Suit with willful blindness that such activities occurred, are still occurring, and constitute direct infringement of the Patents-in-Suit.

58.    Bosch and/or Bosch Sensortec, directly and/or through their subsidiaries and agents (e.g. distributors), have been, and now are, directly infringing claims of the Patents-in-Suit under 35 U.S.C. § 271(a) by making, using, having made, offering for sale, selling, and/or importing the below Accused Bosch Gyroscope Products and Accused Bosch IMU Products, which practice the claims of the Patents-in-Suit, within this District and elsewhere in the United States, including, for example, Bosch and/or Bosch Sensortec's use of said methods during set-up, testing, and demonstration of its Accused Bosch Gyroscope Products and Accused Bosch IMU Products.

59.    To the extent that any steps of the methods covered by the patents-in-suit are performed by third-parties, such as Bosch and/or Bosch Sensortec's customers, AGNC alleges in the alternative that Bosch and/or Bosch Sensortec is liable for direct infringement because it directs and controls any such third-party steps including, for example, by dictating the manner by which its customers use its accused products.  For example, through its products' technical design, Bosch conditions its customers' receipt of the benefits of its products upon performance of a step (or steps) of a patented method and establishes the manner and timing of that performance.  Bosch and/or Bosch

---

[1] https://shop.gopro.com/cameras/fusion/CHDHZ-103.html

COMPLAINT                                              CASE NO.

Sensortec is jointly and severally and/or vicariously liable for any acts performed by such third-parties on behalf of Bosch and/or Bosch Sensortec.

60.     Bosch and/or Bosch Sensortec, directly and/or through their subsidiaries, have been and now are inducing the direct infringement of method claims of the Patents-in-Suit pursuant to U.S.C. § 271(b) at least by one or more of making, having made, using, offering for sale, selling and/or importing the below Accused Bosch Gyroscope Products and Accused Bosch IMU Products in this District and elsewhere in the United States that were designed for, and intended for use in, practicing the methods claimed by the Patents-in-Suit and in the systems claimed by the Patents-in-Suit.  Bosch and/or Bosch Sensortec have induced infringement by actively encouraging infringement by, for example, providing datasheets, product specifications, and other support materials and services to its customers (e.g. GoPro) and by advertising features that are used, and benefits that are achieved only through use of the Patents-in-Suit.

61.     As one example, Bosch and/or Bosch Sensortec, directly and/or through their subsidiaries, explain and advertise the structure and features of its BMI160 inertial measurement unit in its BMI160 Datasheet.  Bosch and/or Bosch Sensortec, directly and/or through their subsidiaries encourage infringing use of the BMI160 by, for example, highlighting typical applications such as augmented reality, indoor navigation, 3d scanning /indoor mapping, advanced gesture recognition, immersive gaming, 9-axis motion detection, air mouse applications and pointers, pedometer/step counting, advanced system power management for mobile applications, optical image stabilization of camera modules, and free-fall detection and warranty logging.[2]

62.     Despite Bosch and Bosch Sensortec's awareness of the Patents-in-Suit and knowledge that its encouraging acts result in direct infringement, Bosch and Bosch Sensortec have engaged in egregious misconduct by continuing these acts of inducement

---

[2] The BMI160 Datasheet is available at https://ae-bst.resource.bosch.com/media/_tech/media/datasheets/BST-BMI160-DS000-07.pdf

COMPLAINT                                                          CASE NO.

with specific intent to cause and encourage direct infringement of the Patents-in-Suit with willful blindness that such activities occurred, are still occurring, and constitute direct infringement of the Patents-in-Suit.

**KNOWLEDGE OF THE PATENTS-IN-SUIT,
HOW DEFENDANTS INFRINGE THEM, AND
DEFENDANTS' CONTINUED INFRINGEMENT DESPITE THAT
KNOWLEDGE**

63.     On November 30, 2017, on behalf of AGNC, Global IP Law Group, LLC sent a letter to GoPro.  Federal Express delivered AGNC's letter to Mr. Tyler Gee, GoPro's Senior Managing Counsel, Head of Intellectual Property, on or around December 5, 2017.   GoPro has been aware of all of the Patents-in-Suit no later than that date.

64.     On November 30, 2017, on behalf of AGNC, Global IP Law Group, LLC also emailed the November 30, 2017 letter to GoPro.

65.     In addition to identifying the Patents-in-Suit, AGNC's November 30, 2017 letter identified the GoPro products and methods that infringe them.

66.     With the November 30, 2017 letter, AGNC included claim charts detailing its infringement contentions for the '555, '122, '648, and '758 patents.

67.     The November 30, 2017 letter expressed a willingness by AGNC to enter licensing discussions.

68.     AGNC (through Global IP Law Group) contacted GoPro several times to follow up the November 30, 2017 letter and email.

69.     GoPro never communicated to AGNC any argument that any claim of the Patents-in-Suit is invalid.

70.     GoPro never communicated to AGNC any argument that it does not infringe any claim of the Patents-in-Suit.

71.     GoPro has not agreed to enter into a licensing agreement with AGNC.

COMPLAINT                                                      CASE NO.

72.   GoPro has not provided AGNC any licensing proposal or made any offer to resolve this dispute.

73.   Bosch's website, https://www.bosch-sensortec.com/bst/contact/locations/locations, states that "Bosch Sensortec" has a location in Mount Prospect, Illinois.

74.   On September 28, 2017, on behalf of AGNC, Global IP Law Group, LLC served third party subpoenas (related to AGNC's litigation against LG and ZTE) on Bosch Sensortec in Mount Prospect, Illinois.

75.   The September 28, 2017 subpoenas identified and concerned, among other topics, the '122, '555, '648, and '758 Patents and how certain Bosch Sensortec products relate to them.

76.   Bosch owns 100% of its subsidiary, Robert Bosch LLC.

77.   On February 27, 2018, on behalf of AGNC, Global IP Law Group, LLC served additional third party subpoenas (related to AGNC's litigation against LG and ZTE) on Robert Bosch LLC.

78.   The February 27, 2018 subpoenas identified and concerned, among other topics, the '122, '555, '648, and '758 Patents and how certain Bosch products relate to them.

79.   On February 8, 2018, AGNC provided Bosch's counsel infringement claim charts for the '122, '555, '648, and '758 Patents as well as infringement contentions and letters that specifically identified 10 Bosch products (including the BMI160) that infringe AGNC's patents, alone and/or as part of the LG and ZTE products.

80.   Bosch has not produced a single document or provided a witness for deposition in response to any of the September 27, 2017 or February 27, 2018 subpoenas.

81.   Bosch also became aware of AGNC's patents during its own patent prosecution activities. Robert Bosch GmbH, one defendant in this case, cited AGNC's '555 patent-in-suit in an IDS during prosecution of its US Patent No. 7,859,067, which

was filed in 2007 and issued in 2010.  In addition, also during its own patent prosecution activities, Bosch and its subsidiaries cited to AGNC's issued patents or pending applications at least 23 other times.

82.    On information and belief, Bosch and/or Bosch Sensortec have had knowledge of the Patents-in-Suit and AGNC's infringement claims that Bosch products relate to the Patents-in-Suit through communications from Bosch and/or Bosch Sensortec customers that have been contacted by AGNC with regard to any of the Patents-in-Suit.

83.    Bosch never communicated to AGNC any argument that any claim of the Patents-in-Suit is invalid.

84.    Bosch never communicated to AGNC any argument that it does not infringe any claim of the Patents-in-Suit.

85.    Bosch has not agreed to enter into a licensing agreement with AGNC.

86.    Bosch has not provided AGNC any licensing proposal.

87.    This Complaint serves as additional notice to GoPro, Bosch, and Bosch Sensortec of the Patents-in-Suit and the manner in which they are infringed.

88.    Despite knowledge of the Patents-in-Suit and knowledge of the manner in which the Patents-in-Suit are infringed as demonstrated in the provided claim charts, GoPro, Bosch, and Bosch Sensortec have continued to infringe, and induce the infringement of, the Patents-in-Suit.

**COUNT I: INFRINGEMENT OF PAT. 6,508,122 CLAIM 1**

89.    AGNC reasserts and realleges paragraphs 1 through 88 of this Complaint as though set forth fully here.

90.    Claim 1 of the '122 Patent provides:

COMPLAINT                                        CASE NO.

| Preamble to Claim 1 | A microelectromechanical system (MEMS) for measuring angular rate of a carrier, comprising: |
|---|---|
| Element A | an angular rate sensor unit receiving dither driver signals, capacitive pickoff excitation signals and a displacement restoring signal and outputting angle rate signals in response to motion of said carrier and dither motion signals; |
| Element B | a central circuitry receiving said angle rate signals in response to said motion of said carrier and said dither motion signals and outputting angular rate signals and digital low frequency inertial element displacement signals; and |
| Element C | a digital signal processing system analyzing said digital low frequency inertial element displacement signals and feeding back said dither driver signals to said angular rate sensor unit. |

91.    Bosch and/or Bosch Sensortec make, use, sell, offer for sale, and import MEMS devices that are and/or include a gyroscope ("Accused Bosch Gyroscope Products").  The Accused Bosch Gyroscope Products include, for example, the BMG250 and/or BMI160.

92.    Bosch and/or Bosch Sensortec have made and continue to make, use, sell, import, and/or offer for sale the Accused Bosch Gyroscope Products, which meet each and every element of claim 1 of the '122 Patent.

93.    The Accused Bosch Gyroscope Products infringe claim 1 of '122 patent alone and as part of the Accused GoPro Gyroscope Products.

94.    GoPro makes, uses, sells, offers for sale, and imports cameras, drones, and/or mountable and wearable accessories that include a MEMS gyroscope (e.g., Accused Bosch Gyroscope Products or other substantially similar gyroscopes such as InvenSense or STMicroelectronics gyroscopes).  GoPro's cameras, drones, and/or mountable and wearable accessories that include a MEMS gyroscope are the "Accused GoPro Gyroscope Products."  The Accused GoPro Gyroscope Products include, for example, at least the Hero5, Hero5 Black, Hero5 Session, Hero6 Black, Fusion, Hero, Karma Drone, and Karma Grip.

COMPLAINT                                                        CASE NO.

95.     GoPro has made and continues to make, use, sell, import, and/or offer for sale the Accused GoPro Gyroscope Products that meet each and every element of claim 1 of the '122 Patent.

96.      "Accused Gyroscope" refers to the gyroscope in the Accused Bosch Gyroscope Products and the Accused GoPro Gyroscope Products.

97.     The Accused Gyroscopes are microelectromechanical systems ("MEMS") for measuring angular rate.

98.     As one example of an Accused GoPro Gyroscope Product, the Hero5 has an Accused Bosch Gyroscope Product, the Bosch BMI160 inertial measurement unit.

99.     The Bosch BMI160 has a three-axis MEMS gyroscope.

100.    As one example of an Accused GoPro Gyroscope Product, the Hero6 has an Accused Bosch Gyroscope Product, the Bosch BMG250 MEMS gyroscope.

101.    A gyroscope measures angular rate.

102.    The Accused Gyroscopes contain an angular rate sensor unit (e.g., drive element, proof mass, drive sensor, and Coriolis sensor).

103.    The angular rate sensor unit receives drive signals (e.g., dither driver signals).

104.    The angular rate sensor unit's drive element receives drive signals (e.g., dither driver signals).

105.    The angular rate sensor unit receives capacitive pickoff excitation signals.

106.    For example, the angular rate sensor unit's sensing element (Coriolis sensor) senses the movement of the proof mass(es) via capacitive pickoffs.  The presence of a C/V converter in the detection loop after the sensing element indicates a charge amplifier, so a DC voltage (e.g., capacitive pickoff excitation signals) is input to the sensing element capacitor(s).

107.    The angular rate sensor unit receives a displacement restoring signal (e.g., compensation driving signal).

108.   For example, the displacement of the angular rate sensor unit's sensing element's proof mass(es) are controlled by a compensation driving signal (e.g., displacement restoring signal).

109.   The Accused Gyroscope contains a driving structure that uses drive signals (e.g., dither driver signal) to oscillate a moveable mass(es) (e.g., proof masses, inertial elements).

110.   The Accused Gyroscopes have a drive-loop that oscillates (e.g., vibrates) the structure, a detection loop that detects the motion caused by Coriolis acceleration, a synchronous demodulator that recovers the rotation signal, and an ADC that provides digital output to a processor.

111.   The Accused Gyroscopes have automatic gain control circuitry to maintain the vibration magnitude (e.g., amplitude).

112.   The Accused Gyroscopes' proof mass(es) is/are driven (e.g., by dither driver signals) out-of-plane to resonate by torque exerted by parallel-plate electrodes, while also providing automatic gain control (e.g., control of the displacement, or magnitude/amplitude, of the torsion plates) that is used to maintain momentum.

113.   The oscillating mass(es), when subjected to rotation, cause/causes a capacitance change.

114.   The capacitance change is received by the angular sensor unit (e.g., the angular sensor unit's Coriolis sensor) by parallel plate capacitor structures (e.g., capacitive pickoffs).

115.   When the Accused Gyroscopes are rotated, the Coriolis effect causes a vibration that is detected by a capacitive pickoff.

116.   The angular rate sensor unit (e.g., the angular sensor unit's sensing element) receives a displacement restoring signal (e.g., compensation driving signal) that indicates the movement of the mass(es) in the drive direction.

17

117.   The capacitance change that is picked up by the angular rate sensor is used to produce angle rate signals in response to the capacitance change that is a result of the motion of the gyroscope.

118.   For example, the Accused Gyroscopes have digital-output X-, Y-, and Z-axis angular rate sensors for outputting the angle rate signals in response to the motion of the carrier.

119.   In the Accused Gyroscopes, the resulting signal is amplified, demodulated, and filtered to produce a voltage that is proportional to the angular rate.

120.   Signals produced by, e.g., the drive sensor of the angular rate sensor unit (dither motion signals) are fed into central circuitry.

121.   The Accused Gyroscopes provide digital output to a motion processor.

122.   The Accused Gyroscopes have central circuitry that receives the angle rate signals from the angular rate sensor unit.

123.   The central circuitry outputs angular rate signals (e.g., X-, Y-, and Z-axis angular rate signals).

124.   The central circuitry receives the dither motion signals from the angular rate sensor unit.

125.   The central circuitry outputs digital low frequency inertial element displacement signals.

126.   The Accused Gyroscopes include a drive-loop that comprises a capacitive position sensing stage, a capacitance to voltage converter, an analog to digital converter, an automatic gain control, a phase locked loop, and a digital to analog converter to oscillate the MEMS structure (e.g., sensing element) at resonance (e.g., resonant vibration).

127.   The capacitance to voltage converter and analog to digital converter processes the dither motion signals into digital low frequency inertial element displacement signals.

COMPLAINT                                                   CASE NO.

128.   The Accused Gyroscopes also includes amplitude control circuitry (e.g., automatic gain control) that effectively controls the displacement of the inertial elements.

129.   The Accused Gyroscopes contain circuitry that recovers, e.g., receives, the angle rate signals that are in response to the motion of the Accused Bosch Gyroscope Products and/or Accused GoPro Gyroscope Products and receives the vibration at resonance due to the drive loop (e.g., dither motion signals).

130.   The Accused Gyroscopes receive the angular rate signals via a sense path with a synchronous demodulator.

131.   The Accused Gyroscopes have a digital processing system that analyzes the digital low frequency inertial element displacement signals.

132.   The digital processing system feeds the dither driver signals to the angular rate sensor unit.

133.   The digital low frequency inertial element displacement signals feed into a control loop that controls the oscillation of the inertial elements/proof masses.

134.   For example, the Accused Gyroscope's drive loop includes a phase lock loop that outputs an in-phase signal (which is in phase with the drive signal) and an automatic gain control circuit to generate a drive signal.

135.   The drive signal is processed by a digital to analog converter and provided to the drive element that generates the force to vibrate the proof mass(es).

136.   The Accused Gyroscopes utilize a Phase-Lock Loop ("PLL") in the digital processing system to control the phase and an Automatic Gain Control ("AGC"), or similar component, to control the amplitude/magnitude.

137.   Direct infringement of claim 1 occurs when Bosch and/or Bosch Sensortec make, import, use, sell, and/or offer for sale the Accused Bosch Gyroscope Products that meet claim 1 of the '122 Patent and when GoPro makes, imports, uses, sells and/or offers for sale the Accused GoPro Gyroscope Products that meet claim 1 of the '122 Patent.

19

138.   GoPro has knowledge of the '122 Patent and AGNC's allegations of how the Accused GoPro Gyroscope Products infringe claim 1 of the '122 Patent since at least November 30, 2017.

139.   GoPro has made, makes, uses, offers to sell, sells, and/or imports the Accused GoPro Gyroscope Products knowing that the Accused GoPro Gyroscope Products infringe claim 1 of the '122 Patent.

140.   Bosch has knowledge of the '122 Patent and AGNC's allegations of how the Accused GoPro Gyroscope Products infringe claim 1 of the '122 Patent since at least February 18, 2018.

141.   Bosch (alone and/or through Bosch Sensortec and/or Bosch's other subsidiaries) makes, imports, uses, sells, and/or offers for sale the Accused Bosch Gyroscope Products knowing that these products infringe claim 1 of the '122 Patent.

### COUNT II: INFRINGEMENT OF PAT. 6,508,122 CLAIM 3

142.   AGNC reasserts and realleges paragraphs 1 through 141 of this Complaint as though set forth fully here.

143.   Claim 3 of the '122 Patent provides:

| Claim 3 | The microelectromechanical system, as recited in claim 1, wherein said central circuitry comprises a dither motion control circuitry and an angle rate signal loop circuitry. |
|---------|------|

144.   The Accused Bosch Gyroscope Products and Accused GoPro Gyroscope Products meet each of the limitations of claim 1 of the '122 Patent, as set forth above.

145.   Bosch and/or Bosch Sensortec have made and continue to make, use, sell, import, and/or offer for sale the Accused Bosch Gyroscope Products that meet each and every element of claim 3 of the '122 Patent.

146.   GoPro has made and continues to make, use, sell, import, and/or offer for sale the Accused GoPro Gyroscope Products that meet each and every element of claim 3 of the '122 Patent.

147.   The Accused Gyroscopes contain dither motion control circuitry.

148.   The Accused Gyroscopes contain angle rate signal loop circuitry.

149.   For example, the Hero5 has an Accused Bosch Gyroscope Product, the Bosch BMI160 inertial measurement unit.

150.   The Bosch BMI160 has a three-axis MEMS gyroscope.

151.   For example, the Hero6 has an Accused Bosch Gyroscope Product, the Bosch BMG250 three-axis MEMS gyroscope.

152.   The Accused Gyroscopes have dither motion control circuitry (e.g., a drive loop).

153.   The Accused Gyroscopes have angle rate signal loop circuitry (e.g., a detection loop).

154.   Direct infringement of claim 3 occurs when Bosch and/or Bosch Sensortec make, import, use, sell, and/or offer for sale the Accused Bosch Gyroscope Products that meet claim 3 of the '122 Patent and when GoPro makes, imports, uses, sells and/or offers for sale the Accused GoPro Gyroscope Products that meet claim 3 of the '122 Patent.

155.   GoPro has knowledge of the '122 Patent and AGNC's allegations of how the Accused GoPro Gyroscope Products infringe the '122 Patent since at least November 30, 2017.

156.   Bosch (alone and/or through Bosch Sensortec and/or Bosch's other subsidiaries) make, import, use, sell, and/or offer for sale the Accused Bosch Gyroscope Products knowing that these products infringe claim 3 of the '122 Patent.

157.   Bosch has knowledge of the '122 Patent and AGNC's allegations of how the Accused GoPro Gyroscope Products infringe the '122 Patent since at least February 18, 2018.

158.   GoPro has made, makes, uses, offers to sell, sells, and/or imports the Accused GoPro Gyroscope Products knowing that the Accused GoPro Gyroscope Products infringe claim 3 of the '122 Patent.

COMPLAINT                                                    CASE NO.

159.    Bosch (alone and/or through Bosch Sensortec and/or Bosch's other subsidiaries) has made, makes, uses, offers to sell, sells, and/or imports the Accused Bosch Gyroscope Products knowing that the Accused Bosch Gyroscope Products infringe claim 3 of the '122 Patent.

### COUNT III: INFRINGEMENT OF PAT. 6,311,555 CLAIM 49

160.    AGNC reasserts and realleges paragraphs 1 through 159 of this Complaint as though set forth fully here.

161.    Claim 49 of the '555 Patent provides:

| Preamble to Claim 49 | An angular rate producing process for measuring a vehicle angular rate, comprising the steps of: |
|---|---|
| Element A | (a) receiving dither drive signal to maintain an oscillation of at least one set of inertial elements in an angular rate detecting unit with constant momentum, and producing angular motion-induced signals with respect to said vehicle angular rate and inertial element dither motion signals; |
| Element B | (b) converting said angular motion-induced signals from said angular rate detecting unit in an interfacing circuitry into consistent and repeatable angular rate signals that are proportional to said vehicle angular rate, and converting said inertial element dither motion signals from said angular rate detecting unit in said interfacing circuitry into digital element displacement signals with predetermined phase; and |
| Element C | (c) inputting said digital element displacement signals into a digital processing system and producing said dither drive signal for locking high-quality factor frequency and amplitude of said oscillating inertial elements in said angular rate detecting unit. |

162.    Bosch and/or Bosch Sensortec have and continue to make, use, sell, import, and/or offer for sale the Accused Bosch Gyroscope Products, the use of which meets each and every element of claim 49 of the '555 Patent.

163.    GoPro has and continues to make, use, sell, import, and/or offer for sale Accused GoPro Gyroscope Products, the use of which meets each and every element of claim 49 of the '555 Patent.

164.    The Accused Gyroscopes perform an angular rate producing process for measuring an angular rate.

165.    For example, the Hero5 contains an Accused Bosch Gyroscope Product, the Bosch BMI160 inertial measurement unit.

166.    The Bosch BMI160 has a three-axis MEMS gyroscope.

167.    For example, the Hero6 contains an Accused Bosch Gyroscope Product, the Bosch BMG250 three-axis MEMS gyroscope.

168.    A gyroscope measures angular rate.

169.    The Accused Gyroscope has an angular rate detecting unit (e.g., drive element, proof mass, drive sensor, and Coriolis sensor).

170.    The Accused Gyroscopes contain a driving structure that uses a drive signal (e.g., dither drive signal) to oscillate a set of moveable masses (e.g., proof masses, inertial elements).

171.    The Accused Gyroscopes have a drive-loop that oscillates (e.g., vibrates) the driving structure (e.g., vibration at resonance), a detection loop that detects the motion caused by Coriolis acceleration, a synchronous demodulator that recovers the rotation signal, and an ADC that provides digital output to a motion processor.

172.    The Accused Gyroscopes have amplitude control circuitry (e.g., automatic gain control) to maintain constant momentum (e.g., constant vibration amplitude/magnitude) (e.g., a set of moveable masses are in oscillation with constant momentum).

173.    The Accused Gyroscopes' proof masses are driven (e.g., by dither drive signals) out-of-plane to resonate by torque exerted by parallel-plate electrodes  while also providing automatic gain control (e.g., control of the displacement, or amplitude/magnitude, of the torsion plates) that is used to constantly drive the momentum.

COMPLAINT                                              CASE NO.

174.   In the Accused Gyroscopes, a comb drive system excites the drive frame to a drive resonant frequency (e.g., resonant vibration).

175.   The Accused Gyroscope has drive signals that drive the proof masses/inertial elements at a resonant frequency (e.g., resonant vibration) to maintain constant momentum.

176.   The movement of the proof masses due to rotation causes a capacitance change that is picked up by the sensing element's (e.g., Coriolis sensor) parallel plate capacitor structures  that produces a voltage signal in response.

177.   The voltage signal is proportional to the applied angular rate, e.g., the voltage signal produced is an angular motion-induced signal with respect to the vehicle angular rate of the Accused GoPro Gyroscope Products.

178.   For example, the Accused Gyroscope has digital-output X-, Y-, and Z-axis angular rate sensors for outputting the angular motion-induced signals (e.g., the voltage signal produced).

179.   In the Accused Gyroscope, the voltage signal produced is amplified, demodulated, and filtered to produce a voltage signal that is proportional to the angular rate.

180.   Signals produced by, e.g., the drive sensor of the Accused Gyroscope (inertial element dither motion signals) are fed into interfacing circuitry.

181.   The Accused Gyroscope converts the angular motion-induced signals from the angular detecting unit in an interfacing circuitry into consistent and repeatable angular rate signals (e.g., X-, Y-, and Z-axis angular rate signals).

182.   The consistent and repeatable angular rate signals are proportional to the vehicle angular rate.

183.   For example, the Accused Gyroscopes include a sense path that detects the motion caused by Coriolis acceleration, a synchronous demodulator that recovers the rotation signal, and an ADC that provides digital output to a motion processor.

184.   The Accused Gyroscope converts the inertial element dither motion signals from the angular rate detecting unit in interfacing circuitry into digital element displacement signals.

185.   The digital element displacement signals have a predetermined phase.

186.   For example, in the Accused Gyroscope architecture, the drive-loop consists of a capacitive position sensing stage and a phase locked loop to oscillate the MEMS structure at resonance.

187.   The Accused Gyroscope architecture also includes amplitude control circuitry (e.g., automatic gain control) that effectively controls the displacement of the inertial elements.

188.   The Accused Gyroscope inputs the digital element displacement signals into a digital processing system and produces the dither drive signal.

189.   The dither drive signal locks the high-quality factor frequency of the oscillating inertial elements in the angular rate detecting unit.

190.   The dither drive signal locks the amplitude/magnitude of the oscillating inertial elements in the angular rate detecting unit.

191.   The digital element displacement signals are input to a phase locked loop to lock a high-quality factor frequency.

192.   The phase locked loop elements feed into a controller that controls the oscillation of the inertial elements.

193.   For example, the Accused Gyroscope's drive loop includes a phase lock loop that outputs an in-phase signal (which is in phase with the drive signal) and an automatic gain control (AGC) circuit to generate a drive signal.

194.   The drive signal is then provided to the drive element that generates the force to vibrate the proof mass(es).

25

195.    The Accused Gyroscopes utilize a Phase-Lock Loop ("PLL") in the digital processing system to control the phase and an Automatic Gain Control ("AGC"), or similar component, to control the amplitude/magnitude.

196.    Direct infringement of claim 49 of the '555 Patent occurs whenever the Gyroscope is active while the Accused Bosch Gyroscope Products or Accused GoPro Gyroscope Products are used in/on a vehicle.

197.    Bosch and/or Bosch Sensortec directly infringe claim 49 of the '555 Patent by making, selling, and importing the Accused Bosch Gyroscope Products which, by design, practice the claimed process.

198.    In addition, Bosch and/or Bosch Sensortec directly infringe claim 49 of the '555 Patent under 35 U.S.C. § 271(a) by using the Accused Bosch Gyroscope Products, including in relation to product demonstrating and testing.

199.    In the alternative, to the extent that any steps of the methods covered by claim 49 of the '555 patent are performed by third-parties, such as Bosch's customers (e.g. GoPro) or users of the GoPro device, AGNC alleges that Bosch and/or Bosch Sensortec is liable for direct infringement because they direct and control any such third-party steps including, for example, by dictating the manner by which its customers use its accused products.  For example, through its products' technical design, Bosch conditions its customers' receipt of the benefits of its products upon performance of a step (or steps) of a patented method and establishes the manner and timing of that performance.  Bosch and Bosch Sensortec is jointly and severally and/or vicariously liable for any acts performed by such third-parties on Bbehalf of Bosch and Bosch Sensortec.

200.    In the alternative, Bosch and/or Bosch Sensortec induces infringement of claim 49 of the '555 Patent by its customers and end users including by distributing the Accused Bosch Gyroscope Products that practice the claimed process in ordinary use.

201.    Bosch's technical design of its gyroscopes dictates that they will be used to infringe the claim.  The Accused Bosch Gyroscope Products' gyroscope is infringing

COMPLAINT                                                        CASE NO.

1  when customers operate the Accused GoPro Gyroscope Products.  Bosch and/or Bosch

2  Sensortec actively induces customers and end-users to directly infringe each and every

3  claim limitation of at least claim 49 of the '555 Patent under 35 U.S.C. § 271(b)..

4      202.   Bosch has had actual knowledge of the '555 Patent since at least 2010.

5      203.   Bosch and/or Bosch Sensortec has been and is knowingly inducing its

6  customers and/or end users to directly infringe at least claim 49 of the '555 Patent with

7  the specific intent to encourage such infringement, and knowing that the acts induced

8  constitute patent infringement.  Bosch and/or Bosch Sensortec's inducement includes, for

9  example, encouraging GoPro to purchase and include its gyroscopes in its products, and

10  by providing, for example, technical guides, product data sheets, demonstrations,

11  software and hardware specifications, and other forms of support to GoPro that induce it

12  and its customers and/or end users to directly infringe claim 49 of the '555 Patent by

13  using the Accused Bosch Gyroscope Products' gyroscope.

14      204.   GoPro directly infringes claim 49 of the '555 Patent by making, selling, and

15  importing the Accused GoPro Gyroscope Products which, by design, practice the claimed

16  process.

17      205.   In addition, GoPro infringes claim 49 of the '555 Patent by using the

18  Accused GoPro Gyroscope Products directly, including in relation to product

19  demonstrating and testing.

20      206.   GoPro makes, uses, offers to sell, sells, and/or imports the Accused GoPro

21  Gyroscope Products knowing that GoPro has infringed and continues to infringe at least

22  claim 49 of the '555 Patent, when the Accused GoPro Gyroscope Products' gyroscope

23  was or is active, under 35 U.S.C. § 271(a) directly.

24      207.   In the alternative, to the extent that any steps of the methods covered by

25  claim 49 of the '555 patent are performed by third-parties, such as GoPro's customers

26  and users of the GoPro devices, AGNC alleges that GoPro is liable for direct

27  infringement because it directs and controls any such third-party steps including, for

28

COMPLAINT                                              CASE NO.

example, by dictating the manner by which its customers use its accused products.  For example, through its products' technical design, GoPro conditions its customers' receipt of the benefits of its products upon performance of a step (or steps) of a patented method and establishes the manner and timing of that performance.  GoPro is jointly and severally and/or vicariously liable for any acts performed by such third-parties on behalf of GoPro.

208.   In the alternative, GoPro induces infringement of claim 49 of the '555 Patent by end users including by distributing the Accused GoPro Gyroscope Products that practice the claimed process in ordinary use.

209.   GoPro's technical design of its products, including that they use gyroscopes, dictates that they will be used to infringe the claim.  The Accused GoPro Gyroscope Products' gyroscope is infringing when customers operate the Accused GoPro Gyroscope Products.  GoPro actively induces customers and end-users to directly infringe each and every claim limitation of at least claim 49 of the '555 Patent under 35 U.S.C. § 271(b).

210.   GoPro has knowledge of the '555 Patent and AGNC's allegations of how the Accused GoPro Gyroscope Products infringe claim 49 of the '555 Patent since at least November 30, 2017.

211.   GoPro has been and is knowingly inducing its customers and/or end users to directly infringe at least claim 49 of the '555 Patent with the specific intent to encourage such infringement, and knowing that the acts induced constitute patent infringement.  GoPro's inducement includes, for example, encouraging customers to turn on and use the Accused GoPro Gyroscope Products by providing technical guides, product data sheets, demonstrations, software and hardware specifications, installation guides, and other forms of support that induce its customers and/or end users to directly infringe at least claim 49 of the '555 Patent by using the Accused GoPro Gyroscope Products' gyroscope.

## COUNT IV: INFRINGEMENT OF PAT. 6,311,555 CLAIM 50

212.   AGNC reasserts and realleges paragraphs 1 through 211, of this Complaint as though set forth fully here.

213.   Claim 50 of the '555 Patent provides:

| Claim 50 | The angular rate producing process, as recited in claim **49**, wherein said angular rate detecting unit is a vibrating type angular rate detecting unit for detecting vehicle angular motions through Corilois Effect and outputting said angular motion-induced signals which are voltage proportional to angular rate and torque signals. |
|---|---|

214.   The Accused Bosch Gyroscope Products and Accused GoPro Gyroscope Products perform each of the limitations of claim 49 of the '555 Patent.

215.   Bosch and/or Bosch Sensortec have and continue to make, use, sell, import, and/or offer for sale the Accused Bosch Gyroscope Products, the use of which meets each and every element of claim 50 of the '555 Patent.

216.   GoPro has and continues to make, use, sell, import, and/or offer for sale Accused GoPro Gyroscope Products, the use of which meets each and every element of claim 50 of the '555 Patent.

217.   The Accused Gyroscopes' angular rate detecting unit is a vibrating type angular rate detecting unit for detecting angular motions.

218.   The Accused Gyroscope's angular rate detecting unit is a vibrating type angular rate detecting unit for detecting angular motions through the Coriolis effect.

219.   For example, the Hero5's Bosch BMI160's gyroscope is a vibrating type angular rate detecting unit that detects angular motions.

220.   For example, the Bosch BMI160's gyroscope has proof masses (e.g., inertial elements) that are driven into a resonant vibration.

221.   For example, the Hero6 Bosch BMG250's gyroscope is a vibrating type angular rate detecting unit that detects angular motions.

222.   For example, the Bosch BMG250 gyroscope has proof masses (e.g., inertial elements) that are driven into a resonant vibration.

223.   The Accused Gyroscope has drive signals that drive the proof masses/inertial elements at a resonant frequency (e.g., resonant vibration) to maintain constant momentum.

224.   The Accused Gyroscope's angular rate detecting unit outputs angular motion-induced signals, which are voltages proportional to angular rate.

225.   The Accused Gyroscopes have a drive-loop that oscillates (e.g., vibrates) the driving structure (e.g., vibration at resonance), a detection loop that detects the motion caused by Coriolis acceleration, a synchronous demodulator that recovers the rotation signal, and an ADC that provides digital output to a motion processor.

226.   The movement of the proof masses due to rotation causes a capacitance change that is picked up by the sensing element's (e.g., Coriolis sensor) parallel plate capacitor structures that produces a voltage signal in response.

227.   The voltage signal is proportional to the applied angular rate, e.g., the voltage signal produced is an angular motion-induced signal with respect to the vehicle angular rate of the Accused Bosch Gyroscope Products and Accused GoPro Gyroscope Products.

228.   For example, the Accused Gyroscope has digital-output X-, Y-, and Z-axis angular rate sensors for outputting the angular motion-induced signals (e.g., the voltage signal produced).

229.   In the Accused Gyroscope, the voltage signal produced is amplified, demodulated, and filtered to produce a voltage signal that is proportional to the angular rate.

230.   The Accused Gyroscope's angular rate detecting unit outputs torque signals.

231.   The drive sensor of the gyroscope produces torque signals (e.g., inertial element dither motion signals) that are indicative the displacement of the proof masses.

232.   Direct infringement of claim 50 of the '555 Patent occurs whenever the Gyroscope is active while the Accused Bosch Gyroscope Products or Accused GoPro Gyroscope Products are used in/on a vehicle.

233.   Bosch and/or Bosch Sensortec directly infringe claim 50 of the '555 Patent by making, selling, and importing the Accused Bosch Gyroscope Products which, by design, practice the claimed process.

234.   In addition, Bosch and/or Bosch Sensortec directly infringe claim 50 of the '555 Patent under 35 U.S.C. § 271(a) by using the Accused Bosch Gyroscope Products, including in relation to product demonstrating and testing.

235.   In the alternative, to the extent that any steps of the methods covered by claim 49 of the '555 patent are performed by third-parties, such as Bosch's customers (e.g. GoPro) or users of the GoPro device, AGNC alleges that Bosch and/or Bosch Sensortec is liable for direct infringement because they direct and control any such third-party steps including, for example, by dictating the manner by which its customers use its accused products.  For example, through its products' technical design, Bosch conditions its customers' receipt of the benefits of its products upon performance of a step (or steps) of a patented method and establishes the manner and timing of that performance.  Bosch and Bosch Sensortec is jointly and severally and/or vicariously liable for any acts performed by such third-parties on Bbehalf of Bosch and Bosch Sensortec.

236.   In the alternative, Bosch and/or Bosch Sensortec induces infringement of claim 50 of the '555 Patent by end users including by distributing the Accused Bosch Gyroscope Products that practice the claimed process in ordinary use.The Accused Bosch Gyroscope Products' gyroscope is active, at least some of the time, whenever Bosch, Bosch Sensortec, or its customers operate the Accused Bosch Gyroscope Products.

237.   Bosch and/or Bosch Sensortec induce infringement of claim 50 of the '555 Patent including by distributing the Accused Bosch Gyroscope Products that practice the claimed process in ordinary use.  Bosch's technical design of its gyroscopes dictates that

they will be used to infringe the claim.  The Accused Bosch Gyroscope Products'
gyroscope is infringing when customers operate the Accused GoPro Gyroscope Products.
Bosch and/or Bosch Sensortec actively induces customers and end-users to directly
infringe each and every claim limitation of at least claim 50 of the '555 Patent under 35
U.S.C. § 271(b).

238.   Bosch has had actual knowledge of the '555 Patent since at least 2010.

239.   Bosch and/or Bosch Sensortec has been and is knowingly inducing its
customers and/or end users to directly infringe at least claim 50 of the '555 Patent with
the specific intent to encourage such infringement, and knowing that the acts induced
constitute patent infringement.  Bosch and/or Bosch Sensortec's inducement includes, for
example, encouraging GoPro to purchase and include its gyroscopes in its products, and
by providing, for example, technical guides, product data sheets, demonstrations,
software and hardware specifications, and other forms of support to GoPro that induce it
and its customers and/or end users to directly infringe claim 50 of the '555 Patent by
using the Accused Bosch Gyroscope Products' gyroscope.

240.   GoPro directly infringes claim 50 of the '555 Patent by making, selling, and
importing the Accused GoPro Gyroscope Products which, by design, practice the claimed
process.

241.   In addition, GoPro infringes claim 50 of the '555 Patent by using the
Accused GoPro Gyroscope Products directly, including in relation to product
demonstrating and testing.

242.   In the alternative, to the extent that any steps of the methods covered by
claim 50 of the '555 patent are performed by third-parties, such as GoPro's customers
and users of the GoPro devices, AGNC alleges in the alternative that GoPro is liable for
direct infringement because it directs and controls any such third-party steps including,
for example, by dictating the manner by which its customers use its accused products.
For example, through its products' technical design, GoPro conditions its customers'

COMPLAINT                                                                              CASE NO.

receipt of the benefits of its products upon performance of a step (or steps) of a patented method and establishes the manner and timing of that performance.  GoPro is jointly and severally and/or vicariously liable for any acts performed by such third-parties on behalf of GoPro.

243.   In the alternative, GoPro induces infringement of claim 50 of the '555 Patent by end users including by distributing the Accused GoPro Gyroscope Products that practice the claimed process in ordinary use. The Accused GoPro Gyroscope Products' gyroscope is active, at least some of the time, whenever GoPro or its customers operate the Accused GoPro Gyroscope Products.

244.   GoPro has knowledge of the '555 Patent and AGNC's allegations of how the Accused GoPro Gyroscope Products infringe the '555 Patent since at least November 30, 2017.

245.   GoPro has been and is knowingly inducing its customers and/or end users to directly infringe at least claim 50 of the '555 Patent with the specific intent to encourage such infringement, and knowing that the acts induced constitute patent infringement.

246.   GoPro induces infringement of claim 50 of the '555 Patent including by distributing the Accused GoPro Gyroscope Products that practice the claimed process in ordinary use.  GoPro's technical design of its products, including that they use gyroscopes, dictates that they will be used to infringe the claim.  The Accused GoPro Gyroscope Products' gyroscope is infringing when customers operate the Accused GoPro Gyroscope Products.  GoPro actively induces customers and end-users to directly infringe each and every claim limitation of at least claim 50 of the '555 Patent under 35 U.S.C. § 271(b).

247.   GoPro's inducement includes, for example, encouraging customers to turn on and use the Accused GoPro Gyroscope Products by providing technical guides, product data sheets, demonstrations, software and hardware specifications, installation guides, and other forms of support that induce its customers and/or end users to directly

infringe at least claim 50 of the '555 Patent by using the Accused GoPro Gyroscope

Products' gyroscope.

### COUNT V: INFRINGEMENT OF PAT. 6,671,648 CLAIM 1

248.   AGNC reasserts and realleges paragraphs 1 through 88 of this Complaint as

though set forth fully here.

249.   Claim 1 of the '648 Patent provides:

| Preamble of Claim 1 | A micro inertial measurement unit, comprising: |
|---|---|
| Element A | an angular rate producer comprising a X axis angular rate detecting unit which produces a X axis angular rate electrical signal, a Y axis angular rate detecting unit which produces a Y axis angular rate electrical signal, and a Z axis angular rate detecting unit which produces a Z axis angular rate electrical signal; |
| Element B | an acceleration producer comprising a X axis accelerometer which produces a X axis acceleration electrical signal, a Y axis accelerometer which produces a Y axis acceleration electrical signal, and a Z axis accelerometer which produces a Z axis acceleration electrical signal; and |
| Element C | an angular increment and velocity increment producer, which is electrically connected with said X axis, Y axis and Z axis angular rate detecting units and said X axis, Y axis and Z axis accelerometers, receiving said X axis, Y axis and Z axis angular rate electrical signals and said X axis, Y axis and Z axis acceleration electrical signals from said angular rate producer and said acceleration producer respectively, wherein said X axis, Y axis and Z axis angular rate electrical signals and said X axis, Y axis and Z axis acceleration electrical signals are converted into are digital angular increments and digital velocity increments respectively. |

250.   Bosch and/or Bosch Sensortec make, use, sell, offer for sale, and import

MEMS devices that are an inertial measurement unit comprising an accelerometer and

gyroscope and/or are an accelerometer or gyroscope (e.g., Bosch accelerometer,

gyroscope, IMU) ("Accused Bosch IMU Products").  The Accused Bosch IMU Products

include, for example, at least the BMI160 and the BHA250 with the BMG250.

251.   Bosch and/or Bosch Sensortec have and continue to make, use, sell, import, and/or offer for sale the Accused Bosch IMU Products that meet each and every element of claim 1 of the '648 Patent.

252.   GoPro makes, uses, sells, offers for sale and imports cameras, drones, and/or mountable and wearable accessories that include an IMU ("Accused GoPro IMU Products").  The Accused GoPro IMU Products include, at least the Hero5, Hero5 Black, Hero5 Session, Hero6 Black, Fusion, Hero, Karma Drone, and Karma Grip.

253.   GoPro has and continues to manufacture, use, sell, import, and/or offer for sale Accused GoPro IMU Products that meet each and every element of claim 1 of the '648 Patent.

254.   "Accused IMU" below refers to the IMUs in the Accused Bosch IMU Products and Accused GoPro IMU Products.

255.   The Accused IMUs contain a micro-electro-mechanical ("MEMS") gyroscope.

256.   The Accused IMUs contain a MEMS accelerometer.

257.   The IMUs contain a micro IMU comprised of a gyroscope and accelerometer.

258.   For example, the Hero5 contains a Bosch BMI160.

259.   The Bosch BMI160 includes a three-axis MEMS gyroscope.

260.   The Bosch BMI160 includes a three-axis MEMS accelerometer.

261.   For example, the Hero6 contains the Bosch BHA250 and BMG250.

262.   The Bosch BMG250 includes a three-axis MEMS gyroscope.

263.   The Bosch BHA250 includes a three-axis MEMS accelerometer.

264.   The Accused IMU's gyroscope senses angular rotation about three axes.

265.   The Accused IMU's gyroscope is an angular rate producer that produces angular rate signals for three axes.

266.   The Accused IMU's accelerometer senses acceleration about three axes.

267.   The Accused IMU's accelerometer is an acceleration producer that produces acceleration signals for three axes.

268.   The Accused IMUs have an angular increment and velocity increment producer that is electrically connected with the gyroscope and accelerometer.

269.   The angular increment and velocity increment producer receives the angular rate and acceleration electrical signals.

270.   The angular increment and velocity increment producer converts the angular rate electrical signals into digital angular increments.

271.   The angular increment and velocity increment producer converts acceleration electrical signals into digital velocity increments.

272.   For example, the Bosch BMI160 has an embedded digital signal conditioning block, and is "ideally suited for augmented reality, gaming, and navigation applications, which require highly accurate sensor data fusion."[3]

273.   The BMI160 acquires data from accelerometers and gyroscopes and processes the data.

274.   For example, the BHA250 has a Fuser Core that acquires data and performs sensor fusion and is "[o]ptimized for data fusion, motion sensing and activity recognition."[4]

275.   Velocity is obtained by a single integration of the accelerometer signal.

276.   Angle is obtained by a single integration of the gyroscope signal.

277.   The Accused IMU's inertial measurement unit utilizes sensor fusion algorithms.

278.   Bosch's sensor fusion provides, for example, quaternion, linear acceleration, rotation, and heading.

---

[3] Bosch BMI160 Datasheet, available at: https://ae-bst.resource.bosch.com/media/_tech/media/datasheets/BST-BMI160-DS000-07.pdf.
[4] Bosch BHA250 Datasheet, available at https://ae-bst.resource.bosch.com/media/_tech/media/datasheets/BST-BHA250B-DS000-01.pdf.

279.   In order for Bosch's sensor fusion to provide orientation, it must use angular increments.

280.   Bosch's sensor fusion algorithms integrate the gyroscope signal to obtain angle rather than angular rate.

281.   The determination of angle from the angular rate necessarily requires the conversion to an angular increment.

282.   Angular increments are obtained during the process by which angle is obtained from angular rate.

283.   Bosch's sensor fusion algorithms integrate the accelerometer signal to obtain velocity.

284.   The determination of velocity from the acceleration necessarily requires the conversion to a velocity increment.

285.   Velocity increments are obtained during the process by which velocity is obtained from acceleration.

286.   Direct infringement of claim 1 of the '648 Patent occurs when Bosch and/or Bosch Sensortec make, import, use, sell, and/or offer for sale the Accused Bosch IMU Products that meet claim 1 of the '648 Patent and/or GoPro makes, uses, offers to sell, sells or imports the Accused GoPro IMU Products.

287.   GoPro has had knowledge of the '648 Patent and AGNC's allegations of how the Accused GoPro IMU Products infringe claim 1 of the '648 Patent since at least November 30, 2017.

288.   GoPro makes, imports, uses, sells, and/or offers for sale the Accused GoPro IMU Products knowing that these products infringe claim 1 of the '648 Patent.

289.   Bosch has had actual knowledge of the '648 Patent and AGNC's allegations of how the Accused Bosch IMU Products infringe the '648 Patent since at least February 18, 2018.

290.   Bosch (alone and/or through Bosch Sensortec and/or Bosch's other subsidiaries) make, import, use, sell, and/or offer for sale the Accused Bosch IMU Products knowing that these products infringe claim 1 of the '648 Patent.

### COUNT VI: INFRINGEMENT OF PAT. 6,671,648 CLAIM 4

291.   AGNC reasserts and realleges paragraphs 1 through 88, and paragraphs 248 through 290 of this Complaint as though set forth fully here.

292.   Claim 4 of the '648 Patent provides:

| Claim 4 | A micro inertial measurement unit, as recited in claim 1, wherein said X axis, Y axis and Z axis angular rate electrical signals produced from said angular producer are analog angular rate voltage signals directly proportional to angular rates of a carrier carrying said micro inertial measurement unit, and said X axis, Y axis and Z axis acceleration electrical signals produced from said acceleration producer are analog acceleration voltage signals directly proportional to accelerations of said vehicle. |
|---------|---|

293.   The Accused Bosch IMU Products and/or Accused GoPro IMU Products meet and/or are used to meet each of the limitations of claim 4 of the '648 Patent.

294.   The Accused IMU's gyroscope has an angular producer.

295.   The angular producer produces analog angular rate voltage signals.

296.   The angular rate voltage signals are directly proportional to the angular rate of the Accused Bosch IMU Products and/or Accused GoPro IMU Products.

297.   For example, the Hero5's Bosch BMI160's gyroscope produces analog angular rate signals that are digitized in an Analog-to-Digital converter (ADC).

298.   For example, the Hero6's Bosch BMG250's gyroscope produces analog angular rate signals that are digitized in an Analog-to-Digital converter (ADC).

299.   The resulting signals are proportional to the angular rate along a particular axis.

300.   The Accused IMU's accelerometer has an acceleration producer.

301.   The acceleration producer produces analog acceleration voltage signals.

302.   The acceleration voltage signals are directly proportional to the acceleration of the Accused Bosch IMU Products and/or Accused GoPro IMU Products.

303.   For example, the Bosch BMI160's accelerometer produces acceleration signals that are digitized in an Analog-to-Digital converter ("ADC").

304.   For example, the Bosch BHA250's accelerometer produces acceleration signals that are digitized in an Analog-to-Digital converter ("ADC").

305.   The resulting signals are proportional to the acceleration along a particular axis.

306.   Direct infringement of claim 4 of the '648 Patent occurs when Bosch and/or Bosch Sensortec make, import, use, sell, and/or offer for sale the Accused Bosch IMU Products that meet claim 4 of the '648 Patent and/or GoPro makes, uses, offers to sell, sells, or imports the Accused GoPro IMU Products.

307.   GoPro has knowledge of the '648 Patent and AGNC's allegations of how the Accused GoPro IMU Products infringe claim 4 of the '648 Patent since at least November 30, 2017.

308.   GoPro makes, imports, uses, sells, and/or offers for sale the Accused GoPro IMU Products knowing that these products infringe claim 4 of the '648 Patent.

309.   Bosch has had actual knowledge of the '648 Patent and AGNC's allegations of how the Accused Bosch IMU Products infringe the '648 Patent since at least February 18, 2018.

310.   Bosch (alone and/or through Bosch Sensortec and/or Bosch's other subsidiaries) make, import, use, sell, and/or offer for sale the Accused Bosch IMU Products knowing that these products infringe claim 4 of the '648 Patent.

**COUNT VII: INFRINGEMENT OF PAT. 6,697,758 CLAIM 1**

311.   AGNC reasserts and realleges paragraphs 1 through 88 and 248-310 of this Complaint as though set forth fully here.

312.   Claim 1 of the '758 Patent provides:

COMPLAINT                                        CASE NO.

| Preamble of Claim 1 | A processing method for motion measurement, comprising the steps of: |
|---|---|
| Element A | (a) producing three-axis angular rate signals by an angular rate producer and three-axis acceleration signals by an acceleration producer; |
| Element B | (b) converting said three-axis angular rate signals into digital angular increments and converting said three-axis acceleration signals into digital velocity increments in an angular increment and velocity increment producer; and |
| Element C | (c) computing attitude and heading angle measurements using said three-axis digital angular increments and said three-axis velocity increments in an attitude and heading processor. |

313.    Bosch and/or Bosch Sensortec have and continue to make, use, sell, import, and/or offer for sale the Accused Bosch IMU Products, the use of which meets each and every element of claim 1 of the '758 Patent.

314.    GoPro has and continues to manufacture, use, sell, import, and/or offer for sale Accused GoPro IMU Products that are used to meet each and every element of claim 1 of the '758 Patent.

315.    The Accused IMUs contain a gyroscope.

316.    The Accused IMUs contain an accelerometer.

317.    The Accused IMUs contain an IMU that comprises a gyroscope and accelerometer.

318.    For example, the Hero5 comprises a Bosch BMI160.

319.    The Bosch BMI160 includes a three-axis MEMS gyroscope.

320.    The Bosch BMI160 includes a three-axis MEMS accelerometer.

321.    For example, the Hero6 comprises the Bosch BMG250 and the BHA250.

322.    The Bosch BMG250 includes a three-axis gyroscope.

323.    The Bosch BHA250 includes a three-axis accelerometer.

324.    The Accused IMU's gyroscope senses angular rotation about three axes.

325.    The Accused IMU's gyroscope is an angular rate producer that produces angular rate signals for three axes.

326.    The Accused IMU's accelerometer senses acceleration about three axes.

40

327.   The Accused IMU's accelerometer is an acceleration producer that produces acceleration signals for three axes.

328.   The Accused IMUs have an angular increment and velocity increment producer.

329.   The angular increment and velocity increment producer receives the angular rate and acceleration signals.

330.   The angular increment and velocity increment producer converts the angular rate signals into digital angular increments.

331.   The angular increment and velocity increment producer converts acceleration signals into digital velocity increments.

332.   For example, the Bosch BMI160 has an embedded digital signal conditioning block, and is "ideally suited for augmented reality, gaming, and navigation applications, which require highly accurate sensor data fusion."[5]

333.   The BMI160 acquires data from accelerometers and gyroscopes and processes the data.

334.   For example, the BHA250 has a Fuser Core that acquires data and performs sensor fusion and is "[o]ptimized for data fusion, motion sensing and activity recognition."[6]

335.   Velocity is obtained by a single integration of the accelerometer signal.

336.   Angle is obtained by a single integration of the gyroscope signal.

337.   The Accused IMU's inertial measurement unit utilizes sensor fusion algorithms.

338.   Bosch's sensor fusion provides, for example, quaternion, linear acceleration, rotation, and heading.

---

[5] Bosch BMI160 Datasheet, available at: https://ae-bst.resource.bosch.com/media/_tech/media/datasheets/BST-BMI160-DS000-07.pdf.
[6] Bosch BHA250 Datasheet, available at https://ae-bst.resource.bosch.com/media/_tech/media/datasheets/BST-BHA250B-DS000-01.pdf.

COMPLAINT                                                    CASE NO.

339.   In order for Bosch's sensor fusion to provide orientation, it must use angular increments.

340.   Bosch's sensor fusion algorithms integrate the gyroscope signal to obtain angle rather than angular rate.

341.   The determination of angle from the angular rate necessarily requires the conversion to an angular increment.

342.   Angular increments are obtained during the process by which angle is obtained from angular rate.

343.   Bosch's sensor fusion algorithms integrate the accelerometer signal to obtain velocity.

344.   The determination of velocity from the acceleration necessarily requires the conversion to a velocity increment.

345.   Velocity increments are obtained during the process by which velocity is obtained from acceleration.

346.   The Accused IMUs contain an attitude and heading processor.

347.   For example, the Bosch BMI160 and/or BHA250 processes sensor fusion algorithms.

348.   Bosch's sensor fusion provides, for example, quaternion, linear acceleration, rotation, and heading..

349.   The Accused IMU's sensor fusion algorithm (using data from the sensors such as the gyroscope) computes attitude (that is, orientation using e.g., rotation matrix or quaternion representation).

350.   The Accused IMU's sensor fusion algorithm (using data from the sensors such as the gyroscope and/or a magnetometer) computes heading.

351.   Bosch and/or Bosch Sensortec directly infringe claim 1 of the '758 Patent by making, selling, and importing the Accused Bosch IMU Products which, by design, practice the claimed process.

352.   In addition, Bosch and/or Bosch Sensortec directly infringe claim 1 of the '758 Patent under 35 U.S.C. § 271(a) by using the Accused Bosch IMU Products, including in relation to product demonstrating and testing.

353.   In the alternative, to the extent that any steps of the methods covered by claim 1 of the '758 patent are performed by third-parties, such as Bosch's customers (e.g. GoPro) or users of the GoPro device, AGNC alleges that Bosch and/or Bosch Sensortec is liable for direct infringement because it directs and controls any such third-party steps including, for example, by dictating the manner by which its customers use its accused products.  For example, through its products' technical design, Bosch and/or Bosch Sensortec conditions its customers' receipt of the benefits of its products upon performance of a step (or steps) of a patented method and establishes the manner and timing of that performance.  Bosch and/or Bosch Sensortec are jointly and severally and/or vicariously liable for any acts performed by such third-parties on behalf of Bosch and/or Bosch Sensortec.

354.   In the alternative, Bosch and/or Bosch Sensortec induces infringement of claim 1 of the '758 Patent by end users including by distributing the Accused Bosch IMU Products that practice the claimed process in ordinary use. The Accused Bosch IMU Products' IMU is active, at least some of the time, whenever Bosch, Bosch Sensortec, or its customers operate the Accused Bosch IMU Products.

355.   Bosch's technical design of its gyroscopes dictates that they will be used to infringe the claim.  The Accused Bosch IMU Products' IMU is infringing when customers operate the Accused GoPro IMU Products.  Bosch and/or Bosch Sensortec actively induces customers and end-users to directly infringe each and every claim limitation of at least claim 1 of the '758 Patent under 35 U.S.C. § 271(b).

356.   Bosch has had actual knowledge of the '758 Patent since at least February 18, 2018.

COMPLAINT                                                        CASE NO.

357.   Bosch and/or Bosch Sensortec has been and is knowingly inducing its customers and/or end users to directly infringe at least claim 1 of the '758 Patent with the specific intent to encourage such infringement, and knowing that the acts induced constitute patent infringement.  Bosch and/or Bosch Sensortec's inducement includes, for example, encouraging GoPro to purchase and include its gyroscopes in its products, and by providing, for example, technical guides, product data sheets, demonstrations, software and hardware specifications, and other forms of support to GoPro that induce it and its customers and/or end users to directly infringe claim 1 of the '758 Patent by using the Accused Bosch IMU Products' IMU.

358.   GoPro directly infringes claim 1 of the '758 Patent by making, selling, and importing the Accused GoPro IMU Products which, by design, practice the claimed process.

359.   In addition, GoPro infringes claim 1 of the '758 Patent by using the Accused GoPro IMU Products directly, including in relation to product demonstrating and testing.

360.   GoPro makes, uses, offers to sell, sells, and/or imports the Accused GoPro IMU Products knowing that GoPro has infringed and continues to infringe at least claim 1 of the '758 Patent, when the Accused GoPro IMU Products' IMU was or is active, under 35 U.S.C. § 271(a) directly.

361.   In the alternative, to the extent that any steps of the methods covered by claim 1 of the '758 patent are performed by third-parties, such as GoPro's customers and users of the GoPro devices, AGNC alleges that GoPro is liable for direct infringement because it directs and controls any such third-party steps including, for example, by dictating the manner by which its customers use its accused products.  For example, through its products' technical design, GoPro conditions its customers' receipt of the benefits of its products upon performance of a step (or steps) of a patented method and establishes the manner and timing of that performance.  GoPro is jointly and severally and/or vicariously liable for any acts performed by such third-parties on behalf of GoPro.

362.   In the alternative, GoPro induces infringement of claim 1 of the '758 Patent by end users including by distributing the Accused GoPro IMU Products that practice the claimed process in ordinary use. The Accused GoPro IMU Products' IMU is active, at least some of the time, whenever GoPro or its customers operate the Accused GoPro IMU Products.

363.   GoPro induces infringement of claim 1 of the '758 Patent including by distributing the Accused GoPro IMU Products that practice the claimed process in ordinary use.  GoPro's technical design of its products, including that they use inertial measurement units, dictates that they will be used to infringe the claim.  The Accused GoPro IMU Products' IMU is infringing when customers operate the Accused GoPro IMU Products.  GoPro actively induces customers and end-users to directly infringe each and every claim limitation of at least claim 1 of the '758 Patent under 35 U.S.C. § 271(b).

364.   GoPro has knowledge of the '758 Patent and AGNC's allegations of how the Accused GoPro IMU Products infringe claim 1 of the '758 Patent since at least November 30, 2017.

365.   GoPro has been and is knowingly inducing its customers and/or end users to directly infringe at least claim 1 of the '758 Patent with the specific intent to encourage such infringement, and knowing that the acts induced constitute patent infringement. GoPro's inducement includes, for example, encouraging customers to turn on and use the Accused GoPro IMU Products by providing technical guides, product data sheets, demonstrations, software and hardware specifications, installation guides, and other forms of support that induce its customers and/or end users to directly infringe at least claim 1 of the '758 Patent by using the Accused GoPro IMU Products' IMU.

## COUNT VIII: INFRINGEMENT OF PAT. 6,456,939 CLAIM 96

366.   AGNC reasserts and realleges paragraphs 1 through 88 and 248 through 365 of this Complaint as though set forth fully here.

367.   Claim 96 of the '939 Patent provides:

45

| Preamble of Claim 96 | A micro inertial measurement unit, comprising: |
|---|---|
| Element A | an angular rate producer for producing X axis, Y axis and Z axis angular rate electrical signals; |
| Element B | an acceleration producer for producing X axis, Y axis and Z axis acceleration electrical signals; |
| Element C | an angular increment and velocity increment producer for converting said X axis, Y axis and Z axis angular rate electrical signals into digital angular increments and converting said input X axis, Y axis and Z axis acceleration electrical signals into digital velocity increments; and |
| Element D | a position and attitude processor connecting with said micro inertial measurement unit for computing position, attitude and heading angle measurements using said X axis, Y axis and Z axis digital angular increments and X axis, Y axis and Z axis velocity increments. |

368.   Bosch and/or Bosch Sensortec have and continue to make, use, sell, import, and/or offer for sale the Accused Bosch IMU Products that meet each and every element of claim 96 of the '939 Patent.

369.   GoPro has and continues to manufacture, use, sell, import, and/or offer for sale Accused GoPro IMU Products that are used to meet each and every element of claim 96 of the '939 Patent.

370.   The Accused IMUs contain a gyroscope.

371.   The Accused IMUs contain an accelerometer.

372.   The Accused IMUs contain an IMU that comprises a gyroscope and accelerometer.

373.   For example, the Hero5 comprises a Bosch BMI160.

374.   The Bosch BMI160 includes a three-axis MEMS gyroscope.

375.   The Bosch BMI160 includes a three-axis MEMS accelerometer.

376.   For example, the Hero6 comprises the Bosch BHA250 and BMG250.

377.   The Bosch BMG250 includes a three-axis MEMS gyroscope.

378.   The Bosch BHA250 includes a three-axis MEMS accelerometer.

379.   The Accused IMU's gyroscope senses angular rotation about three axes.

380.   The Accused IMU's gyroscope is an angular rate producer that produces angular rate electrical signals for three axes.

381.   The Accused IMU's accelerometer senses acceleration about three axes.

382.   The Accused IMU's accelerometer is an acceleration producer that produces acceleration electrical signals for three axes.

383.   The Accused IMUs have an angular increment and velocity increment producer.

384.   The angular increment and velocity increment producer receives the angular rate and acceleration electrical signals.

385.   The angular increment and velocity increment producer converts the angular rate electrical signals into digital angular increments.

386.   The angular increment and velocity increment producer converts acceleration electrical signals into digital velocity increments.

387.   For example, the Bosch BMI160 has an embedded digital signal conditioning block, and is "ideally suited for augmented reality, gaming, and navigation applications, which require highly accurate sensor data fusion."[7]

388.   The BMI160 acquires data from accelerometers and gyroscopes and processes the data.

389.   For example, the BHA250 has a Fuser Core that acquires data and performs sensor fusion and is "[o]ptimized for data fusion, motion sensing and activity recognition."[8]

390.   Velocity is obtained by a single integration of the accelerometer signal.

391.   Angle is obtained by a single integration of the gyroscope signal.

---

[7] Bosch BMI160 Datasheet, available at: https://ae-bst.resource.bosch.com/media/_tech/media/datasheets/BST-BMI160-DS000-07.pdf.
[8] Bosch BHA250 Datasheet, available at https://ae-bst.resource.bosch.com/media/_tech/media/datasheets/BST-BHA250B-DS000-01.pdf.

392. The Accused IMU's inertial measurement unit utilizes sensor fusion algorithms.

393. Bosch's sensor fusion provides, for example, quaternion, linear acceleration, rotation, and heading.

394. In order for Bosch's sensor fusion to provide orientation, it must use angular increments.

395. Bosch's sensor fusion algorithms integrate the gyroscope signal to obtain angle rather than angular rate.

396. The determination of angle from the angular rate necessarily requires the conversion to an angular increment.

397. Angular increments are obtained during the process by which angle is obtained from angular rate.

398. Bosch's sensor fusion algorithms integrate the accelerometer signal to obtain velocity.

399. The determination of velocity from the acceleration necessarily requires the conversion to a velocity increment.

400. Velocity increments are obtained during the process by which velocity is obtained from acceleration.

401. The Accused IMUs contain a position and attitude processor.

402. For example, the Bosch BMI160 and/or BHA250 process sensor fusion algorithms.

403. Bosch's sensor fusion provides, for example, quaternion, linear acceleration, rotation, and heading.

404. The Accused IMU's sensor fusion algorithm (using data from the sensors such as the gyroscope) computes position.

405.   The Accused IMU's sensor fusion algorithm (using data from the sensors such as the gyroscope) computes attitude (that is, orientation using e.g., rotation matrix or quaternion representation).

406.   The Accused IMU's sensor fusion algorithm (using data from the sensors such as the gyroscope and/or a magnetometer) computes heading.

407.   Direct infringement of claim 96 of the '939 Patent occurs when Bosch and/or Bosch Sensortec make, import, use, sell, and/or offer for sale the Accused Bosch IMU Products that meet claim 96 of the '939 Patent and/or GoPro makes, uses, offers to sell, sells or imports the Accused GoPro IMU Products.

408.   GoPro has knowledge of the '939 Patent since at least November 30, 2017.

409.   GoPro makes, imports, uses, sells, and/or offers for sale the Accused GoPro IMU Products knowing that these products infringe claim 96 of the '939 Patent.

410.   Bosch has had actual knowledge of the '939 Patent and AGNC's allegations of how the Accused Bosch IMU Products infringe the '939 Patent since at least February 18, 2018.

411.   Bosch (alone and/or through Bosch Sensortec and/or Bosch's other subsidiaries) make, import, use, sell, and/or offer for sale the Accused Bosch IMU Products knowing that these products infringe claim 96 of the '939 Patent.

**WILLFUL INFRINGEMENT**

412.   GoPro, Bosch, and Bosch Sensortec have willfully infringed AGNC's Patents-in-Suit pursuant to 35 U.S.C. §284 and *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 195 L. Ed. 2d 278 (2016).  This is an egregious case of misconduct beyond typical infringement.  GoPro, Bosch, and Bosch Sensortec had full knowledge of AGNC's Patents-in-Suit, their infringing activities, and have provided no reason to doubt the patents' validity.

413.   Specifically, GoPro has infringed and continues to infringe the above identified claims of each of the Patents-in-Suit despite its knowledge of the Patents-in-

49

1   Suit (at least as early as November 30, 2017), knowledge of how its accused

2   systems/methods infringe the '122, '555, '648, and '758 patents since at least November

3   30, 2017, and how its accused systems/methods infringe the '939 patent since at least the

4   date of this Complaint, and the high likelihood that its actions constitute patent

5   infringement.

6       414.   GoPro's infringement of the Patents-in-Suit is willful and deliberate and its

7   actions constitute egregious misconduct, including refusing to take a license, refusing to

8   negotiate in good faith, and having knowledge of the Patents-in-Suit and notice of the

9   infringement but having no reasonable factual basis for non-infringement or invalidity

10  (e.g. as alleged in paragraphs 63-72, 87, and 88 above). This willful misconduct by

11  GoPro entitles AGNC to enhanced damages under 35 U.S.C. §284 and to attorneys' fees

12  and costs incurred in prosecuting this action under 35 U.S.C. §285.

13      415.   Bosch and/or Bosch Sensortec has infringed and continues to infringe the

14  above identified claims of each of the Patents-in-Suit despite its knowledge of the

15  Patents-in-Suit (at least as early as February 18, 2018 and in the case of the '555 Patent

16  since 2010), knowledge of how its accused systems/methods infringe the '122, '555,

17  '648, and '758 patents since at least February 18, 2018, and how its accused

18  systems/methods infringe the '939 patent since at least the date of this Complaint, and the

19  high likelihood that its actions constitute patent infringement.

20      416.   Bosch and/or Bosch Sensortec's infringement of the Patents-in-Suit is

21  willful and deliberate and its actions constitute egregious misconduct, including having

22  knowledge of the patents-in-suit and notice of the infringement but having no reasonable

23  factual basis for non-infringement or invalidity (e.g. as alleged in paragraphs 73-86, 87,

24  and 88 above). This willful misconduct by Bosch and/or Bosch Sensortec entitles AGNC

25  to enhanced damages under 35 U.S.C. §284 and to attorneys' fees and costs incurred in

26  prosecuting this action under 35 U.S.C. §285.

27

28

COMPLAINT                                                    CASE NO.

**JURY DEMAND**

AGNC demands a trial by jury on all issues that may be so tried.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiff AGNC requests that this Court enter judgment in its favor and against Defendants GoPro Inc., Robert Bosch GmbH, and Bosch Sensortec GmbH as follows:

A. Adjudging, finding, and declaring that Defendants have infringed the above-identified claims of each of the Patents-in-Suit under 35 U.S.C. § 271;

B. Awarding the past and future damages arising out of Defendants' infringement of the Patents-in-Suit to AGNC in an amount no less than a reasonable royalty, together with prejudgment and post-judgment interest, in an amount according to proof;

C. Adjudging, finding, and declaring that Defendants' infringement is willful and awarding enhanced damages and fees as a result of that willfulness under 35 U.S.C. § 284;

D. Adjudging, finding, and declaring that the Patents-in-Suit are valid and enforceable;

E. Awarding attorney's fees, costs, or other damages pursuant to 35 U.S.C. §§ 284 or 285 or as otherwise permitted by law; and

F. Granting AGNC such other further relief as is just and proper, or as the Court deems appropriate.


Dated: May 16, 2018                    Respectfully submitted,

/s/ Gregory Markow
Gregory Markow (State Bar No. 216748)
gmarkow@cgs3.com
Crosbie Gliner Schiffman Southard &
Swanson LLP (CGS₃)
12750 High Bluff Dr., Suite 250
San Diego, California 92130
Telephone: (858) 367-7676

51

COMPLAINT                              CASE NO.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

David Berten
IL Bar # 6200898
dberten@giplg.com
Alison Aubry Richards
IL Bar # 6285669
arichards@giplg.com
Alexander Debski
IL Bar # 6305715
adebski@giplg.com
Global IP Law Group, LLC
55 West Monroe Street, Suite 3400
Chicago, IL 60603
Telephone: (312) 241-1500

*Attorneys for Plaintiff*
*American GNC Corporation*

52